**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| **GEORGIA CARR,**<br><br>       Plaintiff,<br><br>v.<br><br>**LVNV FUNDING, LLC,**<br><br>       Defendant. | C.A. No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Georgia Carr, by and through the undersigned counsel, complains, states, and alleges against defendant LVNV Funding, LLC, as follows:

## INTRODUCTION

1. This is an action to recover damages for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (the "FDCPA").

2. In 1977, Congress enacted the Fair Debt Collection Practices Act ("FDCPA"), codified at 15 USC §§ 1692 *et seq.*, in response to the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). At that time, Congress was concerned that "abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." *Id*. Congress concluded that "existing laws . . . [we]re inadequate to protect consumers," and that "the effective collection of debts" does not require "misrepresentation or other abusive debt collection practices." 15 U.S.C. §§ 1692(b) and (c).

3. Congress explained that the purpose of the Act was not only to eliminate abusive debt collection practices, but also to "ensure that those debt collectors who refrain from using

abusive debt collection practices are not competitively disadvantaged." *Id*., § 1692(e). After determining that the existing consumer protection laws were inadequate, Congress gave consumers a private cause of action against debt collectors who failed to comply with the Act. *Id*., § 1692k.

4. In determining whether a collection letter violates the FDCPA, courts in the Third Circuit apply the "least sophisticated consumer standard." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418 (3d Cir. 2015). The standard is an objective one, meaning the specific consumer need not prove that she was actually confused or misled. See *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014) ("[T]he FDCPA does not require that a plaintiff actually be confused.").

5. The FDCPA does not ordinarily require proof of an intentional violation, and is considered a strict liability statute, whereby a single violation is sufficient to establish civil liability against a debt collector.

## JURISDICTION AND VENUE

6. This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337 and 15 U.S.C. § 1692k(d).

7. This court has jurisdiction over defendant LVNV Funding, LLC because a substantial part of the conduct complained of herein occurred in this Judicial District.

8. Venue is proper in this Judicial District under 28 U.S.C. § 1391(b) because a defendant LVNV Funding, LLC resides in this Judicial District and a substantial part of the conduct complained of herein occurred in this Judicial District.

## PARTIES

9. Plaintiff Georgia Carr ("Plaintiff") is a natural person who is a citizen of the State of Ohio.

10. Plaintiff is a "consumer" as that term defined by 15 U.S.C. § 1692a(3).

11. Defendant LVNV Funding, LLC ("LVNV") is a company existing under the laws of the State of Delaware, with its principal place of business in Wilmington, Delaware.

12. LVNV has transacted business within this state as is more fully set forth hereinafter in this Complaint.

13. LVNV regularly collects or attempts to collect debts asserted to be owed to others.

14. LVNV is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

15. The principal purpose of LVNV's business is the collection of such debts.

16. LVNV uses instrumentalities of interstate commerce, including telephones and the mails, in furtherance of its debt collection business.

17. LVNV is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

18. The acts of the Defendant as described in this Complaint were performed by the Defendant or on Defendant's behalf by their owners, officers, agents, and/or employees acting within the scope of their actual or apparent authority. As such, all references to "Defendant" in this Complaint shall mean Defendant or its owners, officers, agents, and/or employees.

## FACTUAL ALLEGATIONS

19. LVNV alleges Plaintiff owes a debt to LVNV for a personal credit card account from Synchrony Bank ("Synchrony").

20. Plaintiff retained counsel to assist Plaintiff with the Synchrony debt.

21. On December 21, 2020, Plaintiff's counsel notified Synchrony of its representation of Plaintiff concerning the alleged debt and demanded that all further direct communications with Plaintiff concerning the alleged debt cease ("the Letter of Representation").

22. The Letter of Representation set forth Plaintiff's attorneys' name and address.

23. LVNV asserts Synchrony sold, transferred, and/or assigned the alleged debt to LVNV for purposes of collection.

24. In fact, on December 12, 2022, Plaintiff's attorney again notified LVNV of its representation of Plaintiff concerning the alleged debt and demanded that all further direct communications with Plaintiff concerning the alleged debt cease (the "Additional Letter of Representation").

25. Sometime thereafter, LVNV through its master servicer Resurgent Capital Services LP transferred, placed, and/or assigned the alleged debt with a debt collector agent for purposes of collection on behalf of LVNV.

26. Nevertheless, as part of its utilization of its debt collector agent, LVNV or its servicer conveyed information concerning Plaintiff and the alleged debt to its debt collector agent by electronic means.

27. The information conveyed by LVNV its debt collector agent, which, upon information and belief, was viewed by employees of the agent, contained Plaintiff's personal and private information including personal identifying data, among other things.

28. Notwithstanding the Letter of Representation, in an attempt to collect the alleged debt, LVNV, by and through its debt collector agent, sent Plaintiff a letter on behalf of LVNV, dated February 6, 2023 (the "February Letter") directly to Plaintiff.

29. The February Letter was received and read by Plaintiff.

30. Plaintiff's attorney did not consent to LVNV's direct communication with Plaintiff.

31. LVNV or its agent did not send the February Letter to Plaintiff's attorney.

32. LVNV or its agent did not send any letters concerning the alleged debt to Plaintiff's

attorney.

33. LVNV or its agent did not attempt to communicate at all with Plaintiff's attorneys concerning the alleged debt.

34. It is industry practice, when debts are sold and/or assigned to downstream entities, including debt collectors, for such debts to be identified as subject to attorney representation letters and/or cease and desist letters.

35. It is industry practice, when debts are sold and/or assigned in bulk portfolios to downstream entities, including debt collectors, for such portfolios to be identified, either explicitly, or through an indicator in the portfolio's file name, that such accounts are subject to attorney representation letters and/or cease and desist letters.

36. LVNV was notified by Synchrony of Plaintiff's attorneys' representation in the sale file(s) or the sale file name included a notation which informed LVNV that the portfolio was a portfolio of accounts of consumer who were represented by counsel.

37. LVNV was notified by Synchrony of the Letter of Representation in the account level documentation.

38. LVNV was notified by Synchrony of the cease and desist in the sale file(s) or the sale file name included a notation which informed LVNV that the portfolio was a portfolio of accounts that previously provided a cease and desist from further direct communication with the consumer.

39. LVNV was further notified of Plaintiff's attorneys' representation by the Additional Letter of Representation.

40. In fact, LVNV has a pattern and practice of communicating with consumers after receiving attorney representation letters and/or cease and desist letters.

41. In fact, LVNV has a pattern and practice of communicating with consumers after receiving notice of consumers' attorneys' representation.

42. In fact, LVNV has a pattern and practice of communicating with consumers after receiving notice of consumers' attorneys' information.

43. It is industry practice for creditors and debt collectors to inform downstream entities, including debt collectors, of attorney representation letters and/or cease and desist letters received from consumers' attorneys.

44. It is industry practice, when debts are sold and/or assigned to downstream entities, including debt collectors, that such debts are identified as subject to attorney representation letters and/or cease and desist letters.

45. LVNV's agent was notified of Plaintiff's attorneys' representation in the Letter of Representation and Additional Letter of Representation when LVNV transferred, assigned, or otherwise placed the alleged debt for the purposes of collection.

46. LVNV's agent had actual notice of the Letter of Representation and Additional Letter of Representation either from the placement file or through a client portal provided by LVNV or Resurgent Capital Services LP, which contains account level documentation such as account statements for Plaintiff and notices of attorney representation.

47. LVNV's agent had actual notice of the Letter of Representation and Additional Letter of Representation by way of its affiliation with the Resurgent Companies.

48. The February Letter alleged that Plaintiff no longer owed money to Synchrony, but now owed $1,122.08 to LVNV.

49. However, Plaintiff was never indebted to LVNV, and was never indebted to LVNV for $1,122.08.

50. According to data provided by the Consumer Financial Protection Bureau (the "CFPB"), consumer complaints about debt buyers and collectors attempting to collect money not actually owed by the consumer are by far the most common of all complaints received by the Bureau every year. LVNV and its related companies are at the top for the entire country in terms of the volume of such complaints.

51. LVNV is a shell company. LVNV has no employees. LVNV has no collection agreements. Instead, along with at least a dozen other shell companies including Pinnacle Credit Services, Resurgent Funding, CACH, Ashley Funding Services, PYOD, Resurgent Receivables, and Sherman Originator, LVNV is controlled by Resurgent Capital Services ("Resurgent Capital"). Employees of Resurgent Capital act as unpaid "representatives" of LVNV and the other shell companies through what the employees believe is a "limited power of attorney." These "representatives" receive no training whatsoever concerning the shell companies' business and are often unaware of whether at a given time they are acting as an employee of Resurgent Capital, a representative of one of the shell companies, or both.

52. Through the shell companies, Resurgent Capital purchases large portfolios of charged-off consumer debt from banks for pennies on the dollar. Such portfolios rarely include account-level documentation, such as credit agreement signed by consumers, providing competent proof that the consumers actually owe the amount attributed to each consumer.

53. At the exact same time that the portfolio is purchased, the shell companies literally simultaneously "sell" the portfolios to each other using a bogus document entitled "Transfer and Assignment." The Transfer and Assignment documents, used and reused over multiple years, appear at first glance to be legitimately hand-signed agreements between the shell companies. However, a closer examination reveals that the documents are "robo-signed," with identical

facsimile signatures used on many documents spanning multiple years. The signatures are printed in different colors in an attempt to make the observer believe they are legitimate hand-signed documents. They are not. These "purchases" are bogus, meant only to confuse consumers as to whom they may owe money and to insulate Resurgent Capital, rather than bona fide, arm's length transactions.

54. Nevertheless, based on these bogus agreements, LVNV and the other shell companies flood courts around the country with tens of thousands of lawsuits claiming consumers owe them money.

55. This is the same tortured process that Plaintiff's account with Synchrony endured. One of the shell companies, most likely Resurgent Acquisitions LLC, "purchased" a large portfolio of charged-off consumer debt from Synchrony for pennies on the dollar. Such portfolio presumably included Plaintiff's name, but failed to include account-level documentation, such as a credit agreement signed by Plaintiff for the amount sought. Sherman Originator then, at the exact same time, "transferred, sold, assigned, conveyed granted and delivered" the portfolio to another shell company. Then, again at the exact same time, that shell company, in turn "transferred, sold, assigned, conveyed granted and delivered" the portfolio to the instant shell company, LVNV. These "transactions" are all supposedly documented through the sham robo-signed "Transfer and Assignment" document.

56. Indeed, Plaintiff was never indebted to LVNV for $1,122.08 and LVNV never extended credit to Plaintiff for $1,122.08.

57. Plaintiff was never involved in any transaction with LVNV for $1,122.08 and never entered into any contract with LVNV for the payment of $1,122.08.

58. Upon information and belief, LVNV does not possess competent proof that Plaintiff

owes it $1,122.08.

59. Upon information and belief, LVNV does not possess any credit agreement between it and Plaintiff for $1,122.08.

60. Upon information and belief, LVNV does not possess competent proof that Plaintiff agreed to pay it $1,122.08.

61. Upon information and belief, LVNV does not possess any competent proof that Plaintiff is obligated to pay it $1,122.08.

62. Upon information and belief, LVNV does not possess any competent proof that $1,122.08 was ever owed to it by Plaintiff.

63. Upon information and belief, LVNV does not possess any competent proof that Plaintiff owed $1,122.08 at the time LVNV purchased the portfolio of debt.

64. LVNV holds no legal right, title or interest in $1,122.08 owed by Plaintiff.

65. In spite of the foregoing, LVNV began reporting the alleged debt to one or more credit reporting agencies.

66. LVNV's credit reporting negatively impacted Plaintiff's credit.

67. LVNV's credit reporting negatively impacted Plaintiff's creditworthiness.

68. LVNV's credit reporting was viewed by third parties.

69. Plaintiff suffered harm related directly to LVNV's conduct.

70. The February Letter demanded payment directly from Plaintiff.

71. The acts of LVNV as described in this Complaint were performed by LVNV or on LVNV's behalf by its owners, officers, agents, and/or employees acting within the scope of their actual or apparent authority. As such, all references to LVNV in this Complaint shall mean LVNV or their owners, officers, agents, and/or employees.

72. LVNV's conduct as described in this Complaint was willful, with the purpose to either harm Plaintiff or with reckless disregard for the harm to Plaintiff that could result from LVNV's conduct.

73. Plaintiff justifiably fears that, absent this Court's intervention, LVNV will continue to use abusive, deceptive, unfair, and unlawful means in their attempts to collect the alleged debt and other alleged debts.

74. Plaintiff justifiably fears that, absent this Court's intervention, LVNV will ultimately cause Plaintiff further unwarranted economic harm.

75. Plaintiff justifiably fears that, absent this Court's intervention, LVNV will ultimately cause Plaintiff further unwarranted harm to Plaintiff's credit rating.

76. Plaintiff justifiably fears that, absent this Court's intervention, LVNV will ultimately cause Plaintiff to be sued.

77. A favorable decision herein would serve to deter LVNV from further similar conduct.

## FIRST COUNT
### Violation of 15 U.S.C. §§ 1692c(b) and 1692f

78. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

79. The Plaintiff is a "consumer" as that term defined by the FDCPA.

80. LVNV is a "debt collector" as that term is defined by the FDCPA.

81. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

82. The February Letter is a "communication" as that term is defined by the FDCPA.

83. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

84. 15 U.S.C. § 1692c(b) provides that, subject to several exceptions not applicable here, "a debt collector may not communicate, in connection with the collection of any debt," with anyone other than the consumer "without the prior consent of the consumer given directly to the debt collector."

85. The third-party vendor does not fall within any of the exceptions provided for in 15 U.S.C. § 1692c(b).

86. LVNV's conveyance of Plaintiff's personal and private information to its debt collector is a "communication" as that term is defined by the FDCPA.

87. Plaintiff never consented to LVNV's communication with the third-party vendor concerning the alleged debt.

88. Plaintiff never consented to LVNV's communication with the third-party vendor concerning Plaintiff's personal and/or confidential information.

89. Plaintiff never consented to LVNV's communication with its debt collector concerning Plaintiff's personal and/or confidential information.

90. Plaintiff never consented to LVNV's communication with anyone concerning the alleged debt or concerning Plaintiff's personal and/or confidential information.

91. Upon information and belief, LVNV has utilized a third-party vendor for these purposes thousands of times.

92. LVNV utilizes a third-party vendor in this regard for the sole purpose of maximizing its profits.

93. LVNV utilizes a third-party vendor without regard to the propriety and privacy of the information which it discloses to such third-party.

94. LVNV utilizes a third-party vendor with reckless disregard for the harm to Plaintiff and other consumers that could result from LVNV's unauthorized disclosure of such private and sensitive information.

95. LVNV utilizes a third-party vendor with reckless disregard for Plaintiff's right to privacy.

96. LVNV utilizes a third-party vendor with reckless disregard for Plaintiff's right against public disclosure of Plaintiff's private facts.

97. LVNV violated 15 U.S.C. § 1692c(b) when it disclosed information about Plaintiff's alleged debt to the third-party vendor.

98. 15 U.S.C. § 1692f provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.

99. The unauthorized disclosure of a consumer's private and sensitive information is both unfair and unconscionable.

100. LVNV disclosed Plaintiff's private and sensitive information to the third-party vendor.

101. LVNV violated 15 U.S.C. § 1692f when it disclosed Plaintiff's private and sensitive information to the third-party vendor.

102. As relevant here, Congress enacted the FDCPA upon finding that existing laws and procedures for redressing invasions of individual privacy during the debt collection process were inadequate to protect consumers. 15 U.S.C. § 1692(a)-(b).

103. Specifically, Congress sought to protect consumers from communications by debt collectors to third parties. See S. Rep. No. 95-382, at 4 (1977) reprinted in U.S.C.C.A.N. 1695, 1698.

104. As such, a violation of Section 1692c(b) has a close relationship to an invasion of privacy.

105. A violation of Section 1692c(b) is an invasion of privacy.

106. As described herein, LVNV violated Section 1692c(b).

107. As described herein, LVNV invaded Plaintiff's privacy.

108. A violation of Section 1692c(b) also has a close relationship to a public disclosure of private facts.

109. A violation of Section 1692c(b) is a public disclosure of private facts.

110. As described herein, LVNV violated Section 1692c(b).

111. As described herein, LVNV publicly disclosed Plaintiff's private facts.

112. For the foregoing reasons, LVNV violated 15 U.S.C. §§ 1692c(b) and 1692f and is liable to Plaintiff therefor.

## SECOND COUNT
## Violation of 15 U.S.C. §§ 1692g, 1692g(a)(1) and 1692g(a)(2)

113. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

114. The Plaintiff is a "consumer" as that term defined by the FDCPA.

115. LVNV is a "debt collector" as that term is defined by the FDCPA.

116. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

117. The February Letter is a "communication" as that term is defined by the FDCPA.

118. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

119. 15 U.S.C. § 1692g provides that within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the

information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing certain enumerated information.

120. As relevant here, 15 U.S.C. § 1692g(a)(1) requires the written notice provide a statement of the amount of the debt.

121. To comply with 15 U.S.C. § 1692g(a)(1), the statement of the amount of the debt must accurately set forth the actual amount of the debt.

122. A statement of the amount of the debt, when the debt is not owed at all by the consumer, violates 15 U.S.C. § 1692g(a)(1).

123. As previously stated, Plaintiff did not owe the amount the February Letter alleges is owed to LVNV by Plaintiff.

124. As such, the February Letter did not accurately set forth the actual amount of the alleged debt as required by 15 U.S.C. § 1692g(a)(1).

125. The February Letter's statement of the amount of the alleged debt, when Plaintiff did not owe that amount, violates 15 U.S.C. § 1692g(a)(1).

126. As also relevant here, 15 U.S.C. § 1692g(a)(2) requires the written notice provide a statement of the name of the creditor to whom the debt is owed.

127. To comply with 15 U.S.C. § 1692g(a)(2), the statement of the name of the creditor to whom the debt is owed must accurately set forth the name of the entity that actually owns the debt.

128. A statement of the name of the creditor to whom the debt is owed, when the consumer does not owe money to the stated entity, violates 15 U.S.C. § 1692g(a)(2).

129. As set forth above, Plaintiff did not owe money to LVNV.

130. As such, the February Letter did not accurately set forth the name of the entity that actually owns the debt as required by 15 U.S.C. § 1692g(a)(2).

131. The February Letter's statement that LVNV was the name of the creditor to whom the alleged debt was owed, when Plaintiff did not owe any money to LVNV, violates 15 U.S.C. § 1692g(a)(2).

132. For the foregoing reasons, LVNV violated 15 U.S.C. §§ 1692g, 1692g(a)(1) and 1692g(a)(2), and is liable to Plaintiff therefor.

**THIRD COUNT**
**Violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), and 1692e(10)**

133. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

134. The Plaintiff is a "consumer" as that term defined by the FDCPA.

135. LVNV is a "debt collector" as that term is defined by the FDCPA.

136. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

137. The February Letter is a "communication" as that term is defined by the FDCPA.

138. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

139. 15 U.S.C. § 1692d provides, generally, that a debt collector may not engage in conduct the natural consequence of which is to harass, abuse, and/or oppress.

140. 15 U.S.C. § 1692e provides, generally, that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

141. 15 U.S.C. § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt.

142. 15 U.S.C. § 1692e(10) prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt.

143. An allegation by a debt collector that a consumer owes a debt to a certain entity when the consumer does not owe a debt to that entity is a violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A) and 1692e(10).

144. An allegation by a debt collector that a consumer owes a certain amount of money when the consumer does not owe that amount is a violation of 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A) and 1692e(10).

145. As previously stated in this Complaint, Plaintiff did not owe the amount the February Letter alleged is owed to LVNV by Plaintiff.

146. The contention that Plaintiff owed the alleged debt to LVNV, when Plaintiff did not owe the alleged debt to LVNV, amounts to conduct the natural consequence of which is to harass, abuse, and/or oppress in connection with the collection of the alleged debt in violation of 15 U.S.C. § 1692d.

147. The contention that Plaintiff owed the alleged debt to LVNV, when Plaintiff did not owe the alleged debt to LVNV, is a false, misleading, and/or deceptive representation, in violation of 15 U.S.C. § 1692e.

148. The contention that Plaintiff owed the alleged debt to LVNV, when Plaintiff did not owe the alleged debt to LVNV, is a false representation of the character, amount, or legal status of the alleged debt, in violation of 15 U.S.C. § 1692e(2)(A).

149. The contention that Plaintiff owed the alleged debt to LVNV, when Plaintiff did not owe the alleged debt to LVNV, is a false representation or deceptive means to collect or attempt to collect the alleged debt, in violation of 15 U.S.C. § 1692e(10).

150. For the foregoing reasons, LVNV violated 15 U.S.C. §§ 1692d, 1692e, 1692e(2)(A), and 1692e(10) and is liable to Plaintiff therefor.

## FOURTH COUNT
### Violation of 15 U.S.C. §§ 1692c(a)(2) and 1692c(c)

151. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

152. The Plaintiff is a "consumer" as that term defined by the FDCPA.

153. LVNV is a "debt collector" as that term is defined by the FDCPA.

154. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

155. The February Letter is a "communication" as that term is defined by the FDCPA.

156. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

157. 15 U.S.C. § 1692c(a)(2), titled "Communication with the Consumer Generally," prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer."

158. As described herein, LVNV violated 15 U.S.C. § 1692c(a)(2).

159. A violation of 15 U.S.C. § 1692c(a)(2) has a close relationship to an invasion of privacy.

160. A violation of Section 15 U.S.C. § 1692c(a)(2) is an invasion of privacy.

161. LVNV invaded Plaintiff's privacy.

162. 15 U.S.C. § 1692c(c), titled "Ceasing Communication," prohibits a debt collector, subject to certain exceptions not relevant here, from communicating with a consumer in connection with the collection of any debt "[i]f a consumer notifies a debt collector in writing . . . that the consumer wishes the debt collector to cease further communication with the consumer."

163. 15 U.S.C. § 1692c(c) further states, "[i]f such notice from the consumer is made by mail, notification shall be complete upon receipt."

164. As described herein, LVNV violated 15 U.S.C. § 1692c(c).

165. A violation of 15 U.S.C. § 1692c(c) has a close relationship to an intrusion upon the rights to solitude and seclusion.

166. A violation of 15 U.S.C. § 1692c(c) is an intrusion upon the rights to solitude and seclusion.

167. LVNV intruded upon Plaintiff's rights to solitude and seclusion.

168. A violation of 15 U.S.C. § 1692c(c) also has a close relationship to interference with the attorney-client relationship.

169. A violation of Section 1692c(c) is an interference with the attorney-client relationship.

170. LVNV interfered with Plaintiff's and her attorney's attorney-client relationship.

171. For the foregoing reasons, LVNV violated 15 U.S.C. §§ 1692c(a)(2) and 1692c(c) and is liable to Plaintiff therefor.

## FIFTH COUNT
## Violation of 15 U.S.C. § 1692e(8)

172. Plaintiff repeats and realleges the foregoing paragraphs as if fully restated herein.

173. The Plaintiff is a "consumer" as that term defined by the FDCPA.

174. LVNV is a "debt collector" as that term is defined by the FDCPA.

175. The money sought from Plaintiff is a "debt" as that term is defined by the FDCPA.

176. The February Letter is a "communication" as that term is defined by the FDCPA.

177. The actions described herein constitute "an attempt to collect a debt" or "were taken in connection with an attempt to collect a debt" within the meaning of the FDCPA.

178. 15 U.S.C. § 1692e(8) prohibits a debt collector from communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

179. LVNV violated the FDCPA by reporting the alleged debt to one or more credit reporting agencies when Plaintiff did not owe LVNV the money it was attempting to collect.

180. For the foregoing reasons, LVNV violated 15 U.S.C. § 1692e(8), and is liable to Plaintiff therefor.

## JURY DEMAND

181. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment be entered as follows:

a. Finding LVNV's actions violate the FDCPA; and

b. Awarding damages to Plaintiff pursuant to 15 U.S.C. § 1692k; and

c. Awarding Plaintiff's attorneys' fees pursuant to 15 U.S.C. § 1692k, calculated on a "lodestar" basis; and

d. Awarding the costs of this action to Plaintiff; and

e. Awarding pre-judgment interest and post-judgment interest to Plaintiff; all together with

f. Such other and further relief that the Court determines is just and proper.

Dated: December 28, 2023

**GARIBIAN LAW OFFICES, P.C.**

By: */s/ Antranig Garibian*
Antranig Garibian, Esq. (DE Bar 4962)
Brandywine Plaza East
1523 Concord Pike, Suite 400
Wilmington, DE 19803
(302) 722-6885
ag@garibianlaw.com
*Attorneys for Plaintiff, Georgia Carr*